UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CHATMAN, CDCR #P-99062, | Case No.: 21-cv-283 JLS (MDD) |
| Plaintiff, | |
| v. | **ORDER: (1) DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. § 1915A(b); AND (2) DENYING WITHOUT PREJUDICE REQUEST FOR APPOINTMENT OF COUNSEL** |
| C. CAMBERO, et al., | |
| Defendants. | |

Plaintiff Charles Chatman ("Plaintiff"), incarcerated at the California State Prison, Solano, in Vacaville, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  *See* ECF No. 1 ("Compl.").  Plaintiff claims that while, housed at Centinela State Prison in San Diego, California ("Centinela"), he received inadequate medical care, was retaliated against, had mail and personal property stolen, and was denied due process in connection to a disciplinary charge.  *Id.* at 4–14.

This case was initially dismissed due to Plaintiff's failure to either prepay the civil filing fee or qualify to proceed *in forma pauperis*.  *See* ECF No. 7.  Plaintiff has now paid the civil filing fee.  *See* ECF No. 9.

**SCREENING PURSUANT TO 28 U.S.C. § 1915A(b)**

**I.   Legal Standards**

   ***A.     28 U.S.C. § 1915A(b)***

   Because Plaintiff is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915A(b), which requires the Court *sua sponte* to dismiss a prisoner's complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune from such relief. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

   The standard for failure to state a claim under section 1915A(b) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

   ***B.     42 U.S.C. § 1983***

   Section 1983 of title 42 of the United States Code "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## II.    Plaintiff's Allegations

Plaintiff alleges that when he arrived at Centinela on August 2, 2016, he was interviewed by Defendant Dr. S. Ko, a Centinela medical doctor, and that he informed Dr. Ko that his left foot was swollen and painful to walk on.  Compl. at 4.  Dr. Ko instructed Plaintiff to remove his shoes and socks, examined his feet for "a brief moment," and "then cancelled [Plaintiff's] orthopedic shoes and insoles."  *Id.*  When Plaintiff informed Dr. Ko "he suffered from flatfoot deformity, bone degeneration in both feet and degeneration of the disc material at L5-S1," Dr. Ko "said he did not care."  *Id.*  Plaintiff states that his "orthopedic footwear was prescribed to him by an orthopedist years prior after x-rays revealed he was suffering from osteoarthritic changes in the metacarpal pharyngeal joint of the great toe and erosion on the distal end of the promimal [sic] phalanx and erosions on the distal end of the metacarpal to the great toe.  *Id.* at 5.

Plaintiff filed a grievance, designated as a California Department of Corrections and Rehabilitation ("CDCR") 602-inmate appeal, against Dr. Ko "for deliberate indifference."  *Id.*  Plaintiff claims that Defendant Dr. Reilly, the Chief Executive Medical Officer at Centinela, "contrary to established regulations," assigned Dr. Ko to preside over the first level of review of the grievance.  *Id.*  Plaintiff alleges Dr. Ko "falsified plaintiff's medical record and appeal response to reflect that he examined him, while saying he had no calluses, showed no significant flat feet or any significant orthopedic deformity."  *Id.*  Plaintiff alleges that Dr. Reilly disregarded his medical records and his medical condition in rejecting his 602-inmate appeal at the second level of review.  *Id.*

Plaintiff further alleges that on January 31, 2018, he went to the infirmary to see a doctor in relation to pain and stiffness in his left thumb.  *Id.*  Defendant Nurse Manaig "took the role of the doctor, then falsely diagnosed his condition as suffering from musculoskeletal, then prescribed Naproxen."  *Id.*  Defendant Nurse Manaig "refused to allow plaintiff to be examined by the doctor."  *Id.* at 6.  Plaintiff states that he "could not take Naproxen due to his history of hypertension, high cholesterol, asthma and colitis"; that Nurse Manaig "knew of plaintiff's medical history in conjunction with his age, but

suppressed it to satisfy her own agenda"; and that Dr. Reilly supported Nurse Manaig's actions. *Id.*

Plaintiff also alleges that, for months after arriving at Centinela, "his outgoing mail to the news media and other entities was being secretly confiscated by mailroom personnel"; that he "solicited family members to inquire about his correspondences to Good Morning America for Robin Roberts and Today's Show for Hoda Kotb"; and that his family members were told by those media outlets "that they had not received his mail, after two months of it being sent." *Id.* Plaintiff states that he resent his correspondence to the attorneys for Roberts and Kotb in order "[t]o catch the mailroom staff in the act of confiscating his outgoing mail illegally." *Id.* He alleges that Defendants Couch and Bell, both mailroom staff at Centinela, confiscated that correspondence. *Id.* at 7. After Plaintiff filed a 602-inmate appeal regarding that mail, Couch and Bell "indicated they knew the correspondences were not confidential, but they mailed it anyway." *Id.* However, inquiries by Plaintiff's family members revealed that the correspondence was not received by Roberts and Kotb. *Id.*

In addition, Plaintiff alleges that, on March 7, 2017, Defendants Centinela Correctional Officers Cambero and Stone conspired to fabricate a Rules Violation Report ("RVR") stating that Stone had "found a letter along with photographs and a card suspected of containing contraband in plaintiff's name," including a cell phone sim card. *Id.* Defendants Cambero and Stone allegedly conspired to fabricate the RVR in retaliation for Plaintiff's filing of the 602-inmate appeal against Defendants Couch and Bell. *Id.* at 7–8.

Plaintiff alleges that Defendant Centinela Lieutenant E. M. Saucedo acted as the senior hearing officer on the RVR. *Id.* at 8. Plaintiff objected to Saucedo presiding over the hearing "due to previous incidents of being harassed, targeted and retaliated against by him for filing grievances on personnel." *Id.* Plaintiff states that Saucedo found Plaintiff guilty of a nonexistent rule violation, found irrelevant that Cambero "changed his story by saying no letter or pictures were discovered in the envelope," and denied Plaintiff's ///

requests to introduce as evidence the card and envelope to show its metered date conflicted with Cambero's account of when it was received. *Id.*

Finally, Plaintiff alleges that, on February 7, 2020, Defendants Centinela Correctional Officers Hernandez and Guerra confiscated Plaintiff's law books while processing Plaintiff's property for transfer to another institution. *Id.* at 9. Plaintiff further claims that, in retaliation for Plaintiff arguing about the books, they threw away three compact disks, an adapter, a pair of headphones, typewriter ribbons, and correction tape. *Id.* While being processed for transfer on February 12, 2020, Plaintiff argued with Defendants Correctional Officers Guerra and King "in relation to him wearing sneakers on the bus." *Id.* "[I]n retaliation, both defendants went into his boxed property, then stole legal documents, pictures and diagrams related to his criminal case," and, in the process, "punched holes in his mackrel [sic] fish pouches and raisin brand [sic] cereal." *Id.* He alleges "all the aforesaid defendants" stole his legal documents after he asked them to place them on the transfer bus. *Id.* "Months after plaintiff arrived at his destinated institution, the aforementioned defendants sent him a box of legal documents in the name of another prisoner that is currently held in storage." *Id.*

Plaintiff claims violations of the First, Eighth, and Fourteenth Amendments by (1) Dr. Ko, for denial of medical care, falsifying documents, and retaliation for filing, and presiding over, his 602-inmate appeal (count one); (2) Dr. Reilly, for his supervisory role over Dr. Ko and Nurse Manaig, supporting Dr. Ko's false documentation of his medical condition, disregarding Plaintiff's medical history, allowing Dr. Ko to preside over the first level of his 602-inmate appeal, and denying that appeal at the second level (count two); (3) Nurse Manaig, for refusing to let Plaintiff see a doctor and diagnosing and treating his condition "while prescribing medication beyond her experience" (count three); (4) mailroom staff members Couch and Bell, for secretly confiscating Plaintiff's mail (count four); (5) Correctional Officers Cambero and Stone, for retaliating against him for filing a 602-inmate appeal against the mailroom staff (count five); (6) Correctional Lieutenant Saucedo, for failing to be impartial at the RVR hearing and for omitting, suppressing, and

admitting evidence (count six); and (7) Correctional Officers Hernandez, Guerra and King, for destroying his personal property in retaliation for Plaintiff arguing with them (count seven).  *Id.* at 10 –14.  Plaintiff seeks compensatory and punitive damages, costs, appointment of counsel, and a jury trial.  *Id.* at 14.

## III.   Analysis

### A.    *Medical Claims*

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'"  *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'"  *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."  *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, a plaintiff must allege that the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety."  *Id.* (quoting *Wilson*, 501 U.S. at 302–03).  A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

///

1

        *1.     Dr. Ko*

2

      Plaintiff alleges Dr. Ko examined his feet and then "cancelled his orthopedic shoes

3 and insoles," which had been prescribed "years prior." Compl. at 4–5. These allegations

4 amount to a disagreement over the appropriate course of medical care, which does not

5 plausibly allege deliberate indifference. *See Estelle*, 429 U.S. at 105–07 (holding that

6 inadvertent failure to provide medical care, mere negligence or medical malpractice, and

7 differences of opinion over what medical treatment is proper do not state an Eighth

8 Amendment claim).

9

      "[T]o prevail on a claim involving choices between alternative courses of treatment,

10 a prisoner must show that the chosen course of treatment was medically unacceptable under

11 the circumstances, and was chosen in conscious disregard of an excessive risk to (the

12 prisoner's) health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (internal

13 quotation marks omitted). Although Plaintiff alleges that Dr. Ko "said he did not care" in

14 response to Plaintiff describing his medical condition, Compl. at 4, there are no allegations

15 in the Complaint that plausibly demonstrate that Dr. Ko actually drew an inference that

16 cancelling Plaintiff's orthopedics created a serious risk to Plaintiff's health and safety. The

17 allegations in the Complaint plausibly can be interpreted as Dr. Ko simply disagreeing with

18 Plaintiff's own assessment of his need for the orthopedics or making an updated medical

19 diagnosis from the prescription Plaintiff received "years prior" based on an examination

20 of Plaintiff's feet. *See Colwell*, 763 F.3d at 1068 ("A difference of opinion between a

21 physician and the prisoner—or between medical professionals—concerning what medical

22 care is appropriate does not amount to deliberate indifference."). Plaintiff essentially

23 alleges that Dr. Ko should have agreed with Plaintiff that his orthopedics were medically

24 necessary, but Plaintiff fails to allege that Dr. Ko was aware of a serious risk to Plaintiff's

25 health without them. "If a prison official should have been aware of the risk, but was not,

26 then the official has not violated the Eighth Amendment, no matter how severe the risk."

27 *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1060 ("Deliberate indifference is a high

28 legal standard.").

In addition, there are no allegations that Plaintiff suffered any harm as a result of Dr. Ko's decision to cancel his orthopedics, as Plaintiff does not claim that he actually lost the use of his orthopedic shoes or insoles as a result. *See McGuckin*, 974 F.2d at 1060 (holding that a prisoner has no claim for deliberate indifference unless he was harmed). Even if he did lose the use of his orthopedics, Plaintiff fails to allege what, if any, consequence the loss had on him and whether it caused him pain and discomfort or affected his daily activities. *See Id.* at 1059–60 (providing examples of a serious medical need to which a prison doctor may be deliberately indifferent, including "a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

Plaintiff's allegations that Dr. Ko impermissibly reviewed his 602-inmate appeal fail to state a claim because prisoners "lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a [state prison] grievance procedure.")); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (noting that, although prisoners have federal constitutional rights to petition the government for redress of grievances and access to the courts, those rights are "not compromised by the prison's refusal to entertain his grievance"); *see also Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (identification of a constitutionally protected interest is required to state a due process claim).

In order to cure these pleading defects, Plaintiff must allege facts that plausibly suggest not only that he suffered harm as a result of Dr. Ko's cancellation of his orthopedics, but "that the course of treatment the doctor[] chose was medically unacceptable under the circumstances and that the defendant[] chose this course in conscious disregard of an excessive risk to plaintiff's health." *Colwell*, 763 F3d at 1068; *Estelle*, 429 U.S. at 105–07 (holding that inadvertent failure to provide medical care, mere negligence or medical malpractice, and differences of opinion over what medical treatment is proper do not state an Eighth Amendment claim).

### 2.   *Nurse Manaig*

Plaintiff alleges that he went to the infirmary to see a doctor in relation to pain and stiffness in his left thumb but that Nurse Manaig "took the role of the doctor, then falsely diagnosed his condition as suffering from musculoskeletal, then prescribed Naproxen." Compl. at 5.  Nurse Manaig allegedly "refused to allow plaintiff to be examined by the doctor" and knew or should have known, based on Plaintiff's medical records, that he "could not take Naproxen due to his history of hypertension, high cholesterol, asthma and colitis" but "suppressed [that knowledge] to satisfy her own agenda." *Id.* at 6.

Although Plaintiff alleges that Nurse Manaig should have known from his medical records that he could not take Naproxen, there are no allegations that she actually drew an inference that prescribing Naproxen showed a deliberate indifference to Plaintiff's serious medical needs or that Plaintiff informed her that he could not take Naproxen and asked for a different medication but was refused.  Many of the allegations against Nurse Manaig are conclusory, as Plaintiff does not present specific factual allegations supporting his claims that Nurse Manaig "refused to allow plaintiff to be examined by a doctor" or "falsely diagnosed his condition."   No *facts* are alleged indicating that Plaintiff asked to see a doctor, why his request was refused, or on what basis he contends his injury was misdiagnosed.  Conclusory allegations are insufficient to state a section 1983 claim.  *Iqbal*, 556 U.S. at 678.

Neither are there any factual allegations that plausibly show that Nurse Manaig could have summoned or referred Plaintiff to a doctor but, knowing such a referral was necessary to avoid a serious risk to his health, deliberately disregarded that risk in failing to do so. Even if Plaintiff could plausibly allege that the course of treatment Nurse Manaig chose "was medically unacceptable under the circumstances" because his medical records indicated he could not take Naproxen, there are no factual allegations that Nurse Manaig was actually aware that was the case or refused a request for an alternate course of medical care—in other words, that she chose the course of treatment "in conscious disregard of an excessive risk to plaintiff's health."  *Colwell*, 763 F3d at 1068; *Estelle*, 429 U.S. at 105–07

1   (holding that inadvertent failure to provide medical care, mere negligence or medical

2   malpractice, and differences of opinion over what medical treatment is proper do not state

3   an Eighth Amendment claim).

4            *3.     Dr. Reilly*

5            Plaintiff alleges that Dr. Reilly, the Chief Executive Medical Officer at Centinela, is

6   responsible for supervision, training, and discipline of medical personnel at Centinela.

7   Compl. at 4.  Plaintiff claims that Dr. Reilly, "contrary to established regulations," assigned

8   Dr. Ko to preside over the first level of review of his 602-inmate appeal challenging Dr.

9   Ko's discontinuation of his orthopedic footwear prescription, disregarded Plaintiff's

10  medical records and condition in rejecting that appeal at the second level of review, and

11  supported Nurse Manaig's actions.  *Id.* at 4–6.

12           With respect to the allegations regarding Dr. Reilly's supervisory role over the

13  medical treatment Plaintiff received from Dr. Ko and Nurse Manaig, Plaintiff's failure to

14  state a claim against those individuals for deliberate indifference to his serious medical

15  needs is fatal to his claim for supervisory liability against Dr. Reilly.  Supervisory officials

16  may only be held liable under section 1983 if Plaintiff alleges their "personal involvement

17  *in the constitutional deprivation*, or . . . a sufficient causal connection between the

18  supervisor's wrongful conduct and *the constitutional violation*."  *Keates v. Koile*, 883 F.3d

19  1228, 1242–43 (9th Cir. 2018) (emphasis added) (quoting *Starr v. Baca,* 652 F.3d 1202,

20  1207 (9th Cir. 2011) ("[W]hen a supervisor is found liable based on deliberate indifference,

21  the supervisor is being held liable for his or her own culpable action or inaction, not held

22  vicariously liable for the culpable action or inaction of his or her subordinates.")).  The

23  Complaint lacks factual allegations from which a plausible inference could be drawn that

24  Dr. Reilly, by reviewing Plaintiff's 602-inmate appeal in a supervisory capacity, or by

25  allowing Dr. Ko to address that appeal at the first level of review, became aware of and

26  deliberately disregarded a serious risk to his health and safety in allowing the orders and

27  prescriptions of Dr. Ko and Nurse Manaig to stand.  *See Estelle*, 429 U.S. at 105–07

28  (holding inadvertent failure to provide medical care, mere negligence or medical

malpractice, and differences of opinion over what medical treatment is proper do not state an Eighth Amendment claim); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  There are no facts alleged regarding the contents of the appeal to show Plaintiff included sufficient information in his appeal from which Dr. Reilly actually became aware of a serious risk to Plaintiff's health or safety arising from Dr. Ko or Nurse Manaig's actions.  Even assuming the same information in the Complaint was in the appeal, it is insufficient for the reasons set forth above.  To state a claim against Dr. Reilly for failing to reverse the actions of Dr. Ko and Nurse Manaig, Plaintiff must allege specific facts from which a plausible inference can be drawn that Dr. Reilly was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [actually drew] the inference" but deliberately ignored it.  *Farmer*, 511 U.S. at 837.

Thus, the Court dismisses the Eighth Amendment claims against Defendants Dr. Ko, Nurse Manaig, and Dr. Reilly for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121.

### B.   *Retaliation Claims*

Plaintiff alleges that Defendant Cambero fabricated an RVR after Defendant Stone supposedly found a letter addressed to Plaintiff containing a cell phone sim card, and that Defendants Cambero and Stone conspired with each other to fabricate the RVR in retaliation for Plaintiff filing a 602-inmate appeal against Defendants Couch and Bell for confiscation of Plaintiff's mail.  Compl. at 7–8.  Plaintiff also alleges that Defendants Hernandez and Guerra, in retaliation for Plaintiff arguing about their confiscation of Plaintiff's law books while they were processing Plaintiff's property for transfer to another facility, threw away three compact disks, an adapter, a pair of headphones, typewriter ribbons, and correction tape.  *Id.* at 9.  Plaintiff further alleges that, while being processed for his transfer, he argued with Defendants Guerra and King about wearing sneakers on the bus and, "in retaliation, both defendants went into his boxed property, then stole legal documents, pictures and diagrams related to his criminal case," and "punched holes in his

mackrel [sic] fish pouches and raisin brand [sic] cereal." *Id.*  Finally, Plaintiff presents an entirely unsupported and conclusory allegation that Dr. Ko "retaliated against him for filing a grievance." *Id.* at 10.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.").  However, the plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2021).

 "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Id.*  Thus, with respect to the allegations that Defendants Cambero and Stone allegedly conspired to fabricate the RVR charging Plaintiff with receiving contraband in the mail in retaliation for Plaintiff filing the 602-inmate appeal against Defendants Couch and Bell, and his conclusory allegation that Dr. Ko retaliated against him for filing an appeal, Plaintiff has identified a protected activity.  However, the Complaint does not plausibly allege any Defendant acted in retaliation for that protected activity.  Rather, Plaintiff merely sets forth conclusory allegations that Defendants acted with a retaliatory motive.  *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity).  Although the timing of the Defendants' actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference or retaliatory intent.  *Id.*  Plaintiff must allege *facts* from which a ///

plausible inference can be drawn that Defendants took adverse actions against him in retaliation for his protected activity.  Plaintiff has failed to do so here.

With respect to the allegations that Defendants Cambero and Stone fabricated the RVR with a false allegation that Plaintiff received a sim phone card in the mail, Plaintiff does not have a due process right to be free from false accusations or false reports by prison officials.  *See Solomon v. Meyer*, No. 11cv02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no due process right to be free from false disciplinary charges."); *Johnson v. Felker*, No. 12cv02719 GEB KJN P, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under § 1983."); *Muhammad v. Rubia*, No. 08cv3209 JSW (PR), 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), *aff'd*, 453 F. App'x 751 (9th Cir. 2011) ("As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.").  Thus, Plaintiff fails to state a retaliation claim against Defendants Cambero and Stone on this basis.

Accordingly, the Court dismisses the retaliation claims against Defendants Dr. Ko, Cambero, Stone, Hernandez, Guerra, and King for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121.

### C.   *Due Process Claim*

Plaintiff alleges that Defendant Centinela Lieutenant Saucedo denied him due process when he acted as the senior hearing officer on the RVR that charged him with receiving a sim phone card in the mail.  Compl. at 8.  Plaintiff alleges that he objected to Saucedo presiding over the hearing "due to previous incidents of being harassed, targeted and retaliated against by him for filing grievances on personnel."  *Id.*  Plaintiff states that Saucedo found him guilty of a nonexistent rule violation, found irrelevant that Cambero "changed his story by saying no letter or pictures were discovered in the envelope," and denied Plaintiff's requests to introduce as evidence the card and envelope to show that its metered date conflicted with Cambero's account of when it was received.  *Id.*

21-cv-283 JLS (MDD)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff has not stated a section 1983 claim against Defendant Saucedo for a due process violation in presiding over the RVR hearing because he has not alleged facts that plausibly suggest that he was deprived of an identifiable life, liberty, or property interest when he was found guilty of the alleged violation. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (A liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *see, e.g.*, *Montue v. Stainer*, No. 14cv01009-LJO-JLT, 2014 WL 6901853, at *9 (E.D. Cal. Dec. 5, 2014) ("After *Sandin*, in order to demonstrate a liberty interest [arising from the loss of custody credits following a disciplinary hearing], an inmate must show a disciplinary conviction will inevitably lengthen the duration of the inmate's incarceration.") (citing *Sandin*, 515 U.S. at 487). Because of the lack of allegations in the Complaint regarding the nature of the punishment Plaintiff received, if any, from the guilty finding at the RVR hearing, Plaintiff fails to allege that he was deprived of a protected interest and fails to state a section 1983 claim for violation of due process. *See Sandin*, 515 U.S. at 484 (holding that liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life") (internal citations omitted).

Even if Plaintiff can satisfy this pleading requirement, he also must allege facts that plausibly show he did not receive due process at the hearing. Due process requires a prisoner to receive: (1) 24-hour advance written notice of the charges against him, (2) a written statement from the factfinder identifying the evidence relied on and the reasons for the action taken, (3) an opportunity "to call witnesses and present documentary evidence

in his defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals," (4) assistance at the hearing if he is illiterate or the matter is complex, and (5) a "sufficiently impartial" factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). Plaintiff's allegations regarding Defendant Saucedo's evidentiary rulings are insufficient to allege a violation of due process. *See McCloud v. Lake*, No. 18cv01072-JLT (HC), 2019 WL 283709, at *4 (E.D. Cal. Jan. 22, 2019) (finding that evidentiary rulings by prison hearing officers do not constitute a valid basis for alleging impartiality) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("Judicial rules alone almost never constitute a valid basis for a bias or partiality motion.")). Although Plaintiff appears to allege that his history with Defendant Saucedo suggests he could not be a "sufficiently impartial" hearing officer, *Wolff*, 418 U.S. at 571, there are no allegations in the Complaint that Defendant Saucedo was, in fact, biased at the hearing. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, the Court dismisses Plaintiff's due process claim against Defendant Saucedo for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121.

### D.  *Property Loss Claims*

Plaintiff alleges that Defendants Hernandez and Guerra confiscated Plaintiff's law books when they processed his property for transfer to another institution and that, in retaliation for Plaintiff arguing about the books, they threw away three compact disks, an adapter, a pair of headphones, typewriter ribbons, and correction tape  Compl. at 9. Plaintiff also alleges that after he argued with Defendants Guerra and King about wearing sneakers on the bus, they stole legal documents and punched "holes in his mackrel [sic] fish pouches and raisin brand [sic] cereal." *Id.*

Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, due process is not violated by a random, unauthorized deprivation of property if the state provides an adequate post-deprivation

remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  The Ninth Circuit has held that California's tort claim process provides an adequate post-deprivation remedy for property taken without due process.  *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810–895).  Thus, Plaintiff cannot state a due process claim based on Defendants' purportedly unauthorized deprivation of his personal property because he has an adequate post-deprivation remedy for his losses.  *Hudson*, 468 U.S. at 533; *Barnett*, 31 F.3d at 816–17.

Accordingly, the Court dismisses Plaintiff's property loss claims for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121.

### E.    Stolen Mail Claims

Finally, Plaintiff alleges that, for months after arriving at Centinela, "his outgoing mail to the news media and other entities was being secretly confiscated by mailroom personnel"; that he "solicited family members to inquire about his correspondences to Good Morning America for Robin Roberts and Today's Show for Hoda Kotb"; and that his family members were told by those media outlets "that they and not received his mail, after two months of it being sent."  Compl. at 6.  Plaintiff claims that he resent his correspondence to the attorneys for Roberts and Kotb in order "[t]o catch the mailroom staff in the act of confiscating his outgoing mail illegally."  *Id.*  He alleges that Defendants Couch and Bell, both mailroom staff at Centinela, confiscated that correspondence.  *Id.* at 7.  After Plaintiff filed a 602-inmate appeal regarding that mail, Couch and Bell "indicated they knew the correspondences were not confidential, but they mailed it anyway."  *Id.*  Inquiries by Plaintiff's family revealed that the correspondence was not received by the intended parties.  *Id.*

With respect to his legal mail, Plaintiff states that it was sent after a delay caused by Defendants Couch and Bell.  A temporary or isolated incident of delay in the processing of mail does not violate a prisoner's First Amendment rights.  *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999).  With respect to the allegations that Plaintiff's personal mail to

Case 3:21-cv-00283-JLS-MDD   Document 13   Filed 10/27/21   PageID.72   Page 17 of 19

the television personalities was stolen, the allegation is conclusory. Plaintiff alleges it must have been stolen by Defendants because his family could not confirm that the television personalities had received it, but he provides no plausible factual allegations that the reason his family could not confirm delivery was because it was stolen by Centinela mailroom staff. In any case, Plaintiff does not identify any Defendant who allegedly stole his personal mail. Even if he could cure that defect, Plaintiff has not identified a constitutional violation arising from his personal mail not being received by the television personalities. *See Wright*, 219 F.3d at 913 (noting that identification of a constitutionally protected interest is required to state a due process claim).

Accordingly, the Court dismisses Plaintiff's claims against Defendants Couch and Bell for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121.

### F.   Leave to Amend

In light of Plaintiff's pro se status, the Court **GRANTS** him leave to amend his pleading to attempt to sufficiently allege a section 1983 claim against the dismissed Defendants if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### REQUEST FOR APPOINTMENT OF COUNSEL

In his Complaint, Plaintiff requests appointment of counsel. Compl. at 14. There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). "Exceptional circumstances" exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

17

21-cv-283 JLS (MDD)

First, for the reasons discussed above, even under a liberal construction of the Complaint, Plaintiff has yet to show he is likely to succeed on the merits of his claims. Second, Plaintiff's Complaint demonstrates that, while not formally trained in law, he is fully capable of articulating the facts and circumstances relevant to his claims, which are not exceptionally legally complex.  In addition, the Court liberally construes Plaintiff's pro se Complaint, which, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106).   Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's request for appointment of counsel.

## CONCLUSION

In light of the foregoing, the Court:

1.      **DISMISSES** the Complaint **WITHOUT PREJUDICE** and with leave to amend pursuant to 28 U.S.C. § 1915A(b);

2.      **GRANTS** Plaintiff <u>forty-five (45) days'</u> leave from the date on which this Order is electronically docketed in which to file a First Amended Complaint that cures the deficiencies of pleading noted in this Order.  Plaintiff's First Amended Complaint must be clearly entitled "First Amended Complaint," include Civil Case No. 21-CV-283 JLS (MDD) in its caption, and be complete by itself without reference to his original Complaint. Any Defendants not renamed and any claims not realleged in the First Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not realleged in an amended pleading may be "considered waived if not repled").  The Clerk of the Court **SHALL PROVIDE** Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983, for his use in amending his pleading; and

///

///

1     3.    **DENIES WITHOUT PREJUDICE** Plaintiff's request for appointment of

2    counsel.

3       **IT IS SO ORDERED.**

4    Dated:  October 27, 2021

5

6                               Hon. Janis L. Sammartino

                                 United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21-cv-283 JLS (MDD)